Estate of Boyle: Marshall & Ilsley Bank, Trustee, and others, Appellants, vs. Boyle, Respondent.

*October 12—November 7, 1939.*

636

For the appellant Marshall & Ilsley Bank there was a brief by *Churchill, Churchill, Davis & Rapkin* of Milwaukee, and oral argument by *W. H. Churchill.*

For the appellant First Wisconsin Trust Company there was a brief by *Pellette & Zillmer* of Milwaukee, and oral argument by *R. T. Zillmer.*

*Fred A. Foster* of Fond du Lac, guardian *ad litem* for other appellants, argued orally.

*John P. McGalloway* of Fond du Lac, for the respondent.

FAIRCHILD, J. The petitioner seeks to modify the provisions in a will made by the testatrix for the distribution of income from two certain testamentary trusts. He is seeking an augmentation of income so that he can pay debts owed by him to others than the estate and meet obligations, which will be possible if a variation of the terms of the trust as prayed for is made. This cannot, however, be allowed. To contravene the will as prayed for would be making a disposition of property contrary to the provisions of the instrument creating the trusts; and would amount to a gift over to him of property of others, he being so situated by the terms of the will with regard to title and succession that the property not only does not belong to him but he will never be entitled to it.

A right of the petitioner to any income from the two testamentary trusts arises as it must from the provisions of the will. For while in addition to the paragraph from the will quoted in the statement of facts there is, among others, a provision that one half of the net income remaining in the hands of the trustees is to be paid over to Francis H. Boyle, this is subject to the clause in which the testatrix requires that the notes, if not paid before her death or during the

administration of the estate while probate proceedings are pending, are to be paid within five years after the trusts are set up. The court must exercise its power to prevent enlarging or modifying the terms of the trusts and preserve the corpus of the trusts. *Will of Caswell,* 197 Wis. 327, 222 N. W. 235; *Upham v. Plankinton,* 152 Wis. 275, 140 N. W. 5; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; and sec. 231.21, Stats.

Little room for doubt about the purpose and the method to be used to carry out her intention can exist in the face of the plain language of the will. At the conclusion of article fourteen of the will she says it is her intention that the money owed by Francis be paid. She provides further that when paid it is to become part of the corpus of the estate. Whatever consideration may have been in the mind of the testatrix when drawing her will and codicil, it appears that the inheritance of the grandchildren and the possible inheritance of others was associated with the bequest to Francis H. Boyle. The conserving of the estate was made of primal importance. While the provision for a sufficient income to Francis was desired, at the same time the possibility of extravagance on the part of any member of the family endangering the strength of the fortune was given consideration and was guarded against. She created a plan under which her son was to have a suitably furnished residence, a position which would pay him $200 per month, and the benefit of an income from a trust independent of and separate from the testamentary trusts. The proportion of income from all these trusts which goes to him is only during his life. The residue, with minor exceptions, she wills and directs to be added to the corpus of her estate and this direction is mandatory. The "living trust" afforded a sufficient income as she viewed it to maintain his family. The form and manner of the creation of the restrictions and limitations point to a desire for a plan under which former extravagances could no longer be in-

dulged, and a plan under which by instalments a large indebtedness of Francis to his mother's estate would gradually be paid, thus saving the estate from loss of the principal of the loans at least. The trustees cannot lawfully accede to the demands of the petitioner. There is to be no compromise of his indebtedness, and in the will the testatrix fixes the terms of repayment and directs the trustees to withhold enough of respondent's income from the testamentary trusts to pay the notes within five years. The finding that it was her intention to provide for this particular beneficiary overlooks the specific requirement that out of the income which may be said to be his, he is to be obligated to reimburse the estate for moneys loaned him, and that this when collected is to take its place in property which eventually goes under the will to others than himself and is against the great weight and clear preponderance of the evidence. He has but part of the income over and above enough to discharge his obligations on the notes, and as suggested in appellant's brief, the granting of the relief prayed for by the petitioner would violate "a decidedly fundamental part of testatrix's will." It would permit him to remain indebted to the estate while paying other creditors. In the event that petitioner were to receive the payments directed by the county court and nothing be paid upon his notes, should he die before more prosperous times with the notes unpaid, the very plan of securing the payment would be destroyed.

There is no occasion here for resorting to judicial construction. The evidence indicates the occasion for the testatrix's scheme as outlined in her will and codicil. She provided that in the event her son survived her a certain course was to be followed. After the payment of certain amounts, one half of the net income was to be for the benefit of her son during his lifetime. The other one half of the net income was to be added to the corpus of the estate. After the death of the son, assuming living issue, the trusts continue for a

period of twenty-one years, or so long during said period as any issue of him survives, and the trustees are to disburse the income by applying it to the maintenance, support, benefit, care, and comfort of each of his children. When the first one of such children reaches the age of twenty-five years, and so becomes entitled to an equal portion of said net income with the others, the portion thereof to which those of said children who are still under the age of twenty-five years, in excess of the annual allowance, and the educational allowance, if any, shall accumulate to the credit of such children under the age of twenty-five years, respectively, and be held by the trustees until said children, respectively, reach the age of twenty-five years; at which time such income accruals, with accumulated interest thereon, shall be turned over to each child.

The testatrix planned building up an estate which eventually will go to her son's children, and in the event of their failure to survive, to others named in the will, a sister of testatrix, her brother, and a nephew of her deceased husband or their issue free and clear of any trust and in equal shares. The facts on which the argument in favor of the order granted by the county court is made do not raise a legal basis to support the respondent's contention.

A purpose of the testatrix to exclude the petitioner's wife, so far as possible, from the enjoyment of the money may or may not have prompted the provisions which now appear to threaten the reduction of the amount available to the wife for support of the children. The testatrix provided a home in which the petitioner and his family may live free from expense so far as taxes and upkeep are concerned. This present pressure of circumstances may result in compelling members of the now scattered family to readjust their plans and live in a proximity to each other that will enable both parents to have some association with their children, and thus approach a satisfying of the testatrix's evident desire that her son have a life approaching to normal.

The petitioner asks that if the actual terms of the trusts cannot be contravened by the court, then the court provide by its judgment that the requirements of the petitioner be taken care of by extending the five-year period within which petitioner's notes are to be paid. This again would be an invasion of the rights of others. Anticipation of benefits may possibly occur under some circumstances without contravening the express provisions of the trust instrument, but this cannot be where the one seeking the advantage has no interest against which the advance can be balanced.

Sec. 231.21 (1), Stats., provides that when the trust is expressed in the instrument creating it, every act of the trustee in contravention of the trust shall be absolutely void. The testatrix might have eliminated the petitioner entirely from sharing in any way in her estate. She chose to restrict him within certain limits for reasons which seemed to her sufficient, and within those limits the trustees must deal with him. The studied purpose of building up the corpus of the estate, which under no circumstances can ever reach the petitioner, would to a considerable extent be circumvented if the trustees were permitted to forego the obligation of collecting as much as possible of the indebtedness of petitioner to his mother's estate directly assigned to corpus which eventually goes to others. The petitioner cannot possibly place himself within reach of the provisions of sec. 231.21 (2), Stats. He has no interest which can be appropriated to him, no interest which can be sold, and nothing that can be used as a security for a loan.

We do not consider a case is presented calling upon the court to decide what the effect of a statute giving the courts power to contravene the terms of a testamentary trust might be. The case is not within the statute as written, and to comply with the requirements of the judgment, property other than petitioner's must be used, and that in any event cannot be sanctioned. *Estate of Adams,* 216 Wis. 77, 255 N. W.

886. The finding that the testatrix did not have in mind a change in circumstances or the possibility of the falling off of income when she made her will, is not controlling even if there was evidence to support it. There is no one now who can remake the will. It appears, however, that on August 10, 1933, she re-examined her will and in her codicil solemnly declared : "I have at the time of the preparation and execution of this codicil gone over my last will and testament and I herewith express my full satisfaction of the terms and provisions thereof." She was a woman of considerable business experience, and there is some evidence that her gross income had declined somewhat, and we must assume that she was aware that about one third of her estate would be consumed in payment of inheritance and estate taxes and expenses of administration.

The scheme of the testatrix in the preparation of the will and codicil appears and it indicates that, having in mind that her son would be embarrassed financially, she proposed to prevent the depletion of her estate. She therefore excluded him from taking any part of the corpus thereof and by the terms of the trust fixed the income "not to be susceptible of assignment, anticipation, hypothecation, or seizure by legal process."

*By the Court.*—Judgment reversed.